The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and dishonorable court. Good morning to all counsel. I'm Chief Judge Howard. Judge Thompson and I would like to welcome Judge Woodcock from the District of Maine back to the Court of Appeals and thank you, Judge Woodcock, for your additional service to the judiciary. The clerk may call the first case. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Rafael Soler-Montalvo, appeal number 20-1311. Attorney McCutcheon, please introduce yourself for the record and proceed with your argument. Good morning. May it please the court, Andrew McCutcheon on behalf of Mr. Rafael Soler-Montalvo. I'd like to reserve two minutes for rebuttal, please. Yes. Mr. Soler-Montalvo's trial turned on mens rea, whether he believed the individual he was messaging with on an adults-only website filled with make-believe was actually underage. During trial, the government improperly manufactured invalid testimony and information designed to and in doing so engaged in misconduct warranting the granting of a mistrial. Compounding these errors, the district court excluded expert testimony that would have rebutted the government's improper assertions and arguments and aided the jury in an objective evaluation of the evidence. Turning to the misconduct, although it occurred at multiple points during trial, the first of two key instances of misconduct came through the government's repeated elicitation of misleading and inflammatory testimony regarding goth teenagers and traumatized sexually sophisticated actual victims in a case devoid of both. This court's prayer decision lays out four factors in evaluating the prejudice that flows from such misconduct. Factor one, the statements were misleading, pronounced, and persistent. The government repeated the questions and answers multiple times. Out of 29 pages of transcript for that particular witness, 11 pages of them dealt with this particular issue and objections to the government's testimony. Counselor, when Mr. our agent said, I'm not sure how to pronounce his name, but when he was on the witness stand, was he ever asked why it was Janus 666? Did he ever explain why the 666 was there? Your honor, on cross-examination defense counsel inquired and admitted that it was the mark of the beast and associated with the devil. There was no testimony about goths or vulnerable victims or sexual sophistication, nothing of that nature. That was well, he said it was the mark of the beast, but did he somehow tie it into whether that had some sexual meaning for someone? No, your honor. At no point did he indicate that predators seeking to engage in messaging. That's why the attempted injection of this testimony through another agent who had nothing to do with the conversation or the posting itself was such error. It was essentially unnoticed expert testimony without any sort of evidentiary basis foundation or validity whatsoever. Why doesn't the appeal waiver apply? The appeal waiver, your honor? Yes. In what sense? I'm not sure I follow. Well, this was a trial. Oh, okay. Just to be clear. Okay. Sorry. I put the wrong one. Thank you. Yes, sir. And returning to the first issue that you had was a preemptory statement that the assistant United States attorney blurted out at the time of the jury selection. And that was against the judge's specific order, correct? Yes, your honor. Do you have any law you cited this United States versus ploof? Do you have any law that says that a public disclosure during the course of a jury selection constitutes error? First, I would add that it was in direct contravention of the magistrate judge's order who was presiding over the jury selection. I would have to supplementary brief that issue for the court on the issue of reversible error. But it was the first of several instances of misconduct that were designed to show that the defense was somehow tinkering behind the scenes trying to prevent the jury from having a full and fair opportunity to review the evidence. It's the idea of sort of noble corruption where the defense is banking on technicalities and tinkering behind the scenes and preventing the government from presenting a full case. And I think that links to the statements regarding goth, the statements regarding kick during closing arguments. Again, the defense was forced to object to those statements. And it appears as if the defense is trying to prevent evidence from coming before the jury when the opposite is true. It's simply trying to prevent invalid evidence that has no evidentiary foundation or basis from being presented. And I ask you to turn to the issue of Dr. Kraft because I wasn't quite clear about what you were arguing there. Dr. Kraft, when I looked at it, it seemed to be that he was allowed to fully testify. That's in your appendix 281 to 322 about the role playing and the internet and things of that sort. And the district judge initially excluded his testimony, but upon reflection, I think reconsideration, he allowed Dr. Kraft to testify. What was it that you say Dr. Kraft should have been allowed to testify to that he was not allowed to testify? And where is that in the record? Yes, sure. Dr. Kraft was allowed to testify about one of two categories of evidence that the defense wanted to introduce that being online role play and fantasy and the psychology of the internet. He was not allowed to testify about contrasting the facts and evidence of the case with patterns generally seen in online predators. And that's clear. If the court looks at the orders from docket entry 93 to docket entry 100, it's initially excluding all testimony. There's a motion for reconsideration filed by the defense bringing up primarily the second issue, which is online role play, which wasn't fully addressed in the court's initial order. The court later denied that second category of testimony, but revived it in docket entry 100, citing the Joseph case, which is a case that only addresses online role play and fantasy, not the other category of testimony. The court made its position crystallized at transcripts 261 and 262, where it repeats its holding in its order, stating that the expert cannot talk about Mr. Solaire or the case and can only speak in general terms. So nowhere below did the government make the argument that it now attempts to on appeal that Mr. Solaire was fully allowed to address both categories of testimony. In post-trial briefing, the government never made that argument or voice confusion about the issue, and neither did the district. So let me, if I may, I just want to make sure I understand your argument because perhaps I don't. So the expert was permitted to testify with respect to what I'll call the innocent profile, and the jury had before it the facts about whether this defendant fit that profile or not. Regardless of whether the expert was able to testify to that, the jury had those facts and had the expert testimony about the innocent profile. So I take it that your objection is he was not permitted to testify about the predator profile. Is that accurate? I don't know if a complete innocent profile was presented before the jury. Certainly the defense was trying to elicit that information as best as possible, but it obviously wasn't in the position to discuss the facts of the case, the messages, and the posting with the expert. What was proffered that the expert would testify to with respect to an innocent profile that he was not permitted to testify to? Yes, your honor. So a couple of things. First, having reviewed the messages, he could see that sex was almost immediately injected into the conversation, which is inconsistent with how online predators generally behave, and that's a fact that the average juror most likely would not know. You're going to the predator profile now, and that's a separate objection. That was my question. Isn't that your actual argument, is that he wasn't permitted to testify to the predator profile? He wasn't able to compare the facts and messages and circumstances. The jury could do that. So you're saying you have two arguments. One, he should have been of the evidence about this particular defendant against the innocent profile that he was permitted to testify to, and in addition that he wasn't permitted to testify as to the predator profile. Which do you think is your stronger, or you don't budge on either one? Your honor, it's hard for me to budge on either one. I think I would admit to the court that I the stronger of the two. I think they're close, but it's the stronger of the two, because that's information that the average juror would not know. I think the average juror, again, would believe that somebody who's on Craigslist casual encounters is potentially matching the profile of a predator, when the opposite is true. That's a place, it's an online adult-only website. Predators congregate where minors congregate. They go to forums designed for teenagers and websites designed for teenagers. They groom slowly over time. They don't inject sex into the conversation or send videos and photos, excuse me, not videos, but photos and pins showing where their residence is. Let me ask whether the other judges have additional questions that they would like to follow up on. I did have one. Counselor, assuming that the prosecutor's mention of her kids being on kick was improper, number one, the judge gave a cautionary instruction, a curative instruction, but assuming that that may not have been enough, how should we think through the other evidence that came in that supported the conviction, and more specifically, the photographs that were sent of what clearly appeared to be a 13-year-old, as well as your client telling her at the mall that she would be leaning back in her seat so that no one would see her and to make sure that it was their secret? I mean, that all points towards your client knowing that he was dealing with, that doesn't seem to be part of role play. Well, Your Honor, the central evidence in the case was the exchange on kick and the posting on Craigslist. They colored the further interaction and the exchange of messages that Mr. Solaire had with this individual. Those messages were subject to interpretation. They contained internal inconsistencies and nonsensical statements. Mr. Solaire knew who he was communicating with, was familiar with the sexual connotation 69 and quote-unquote daddy relationships, despite feigning inexperience later in the chat. Mr. Solaire testified about his history of use of Craigslist and the misleading, fraudulent, and fantastical nature of it. He had no priors. He possessed no child pornography. So those are all things that color his interaction and his conversation with this individual. I don't believe that the fact that he showed up at Walmart is inconsistent with role play. Dr. Craft testified about the demasking process, why somebody would want to see who they were actually speaking with. Mr. Solaire testified that it was often entertainment value for him. It was often curiosity for him. So the fact that he showed up and continued having this chat messaging conversation, I don't think is inconsistent with Mr. Solaire's past behavior or Dr. Craft's testimony. And I see that in that the defense introduced exhibits showing that even when Mr. Solaire knew that he was speaking with somebody who was misrepresenting who they were or their licenses, he continued the conversation because of the entertainment value for him. And I also think that's why these instances are intertwined, Your Honor. Your Honor mentioned the kick messages. The kick messages and the goth testimony both went to mens rea. It was the government attempting to conjure up these alternate reasons to fulfill the element of mens rea. For sexual, hyper-sexualized, vulnerable victims. Mr. Solaire knew he was speaking to a minor victim because the quote-unquote kids use kick, including the prosecutor's own children. And if you couple that with the exclusion of the expert testimony that would have explained that some of the things that may appear as facts that suggest that Mr. Solaire is an online predator are actually inconsistent with the profile that's generally seen in these individuals who are engaging in predatory behavior online. And that's why there's an interconnection between the misconduct of the government and the exclusion of the defense expert's testimony. And it's why let's leave it there for a minute and let me ask if there are additional questions. Okay, you've reserved some time, Mr. McCutcheon. If you would mute your device, we will hear from the government. Mr. Goldman. Good morning, Your Honors. It may have pleased the court. Ross Goldman for the United States. Unless the court prefers that I start elsewhere, I want to begin by addressing the issue with respect to Dr. Kraft's expert testimony. And as the government outlined in our answering brief, in this case, the district court did not impose the limitation on Dr. Kraft's testimony about which Mr. Solaire or that Mr. Solaire claims. And I think this is most clearly stated on page 79 of the appendix, which is the district court's final word on the matter pre-trial where the court said, following Mr. Solaire's testimony, quote, the court will allow the testimony of Dr. Kraft. There was no limitation on the extent to which Dr. Kraft would be permitted to testify to patterns of sexual predators or how they differed from the facts at issue in this case. The only limitation on Dr. Kraft's testimony that the record shows was imposed is a limitation that Mr. Solaire himself placed on the scope of Dr. Kraft's testimony. And this is made most evident in his initial notice, his expert notice and in his subsequent filings pre-trial, that Mr. that Dr. Kraft would not be asked to testify to whether in Dr. Kraft's view, Mr. Solaire believed that he was role playing or believed that Janice was a minor. That is, Dr. Kraft had never met, evaluated, treated or assessed Mr. Solaire. Dr. Kraft was not. And again, this is Mr. Solaire himself making clear for the district court all along that he was not going to ask Dr. on that ultimate issue. That is the only limitation that was imposed. Council referred to pages 261 and 262 of the appendix. And he claims that this is an instance where the district court is imposing limitation on the extent of the permitted testimony on sexual predators and such. What the court there says is the court, and I'll just quote it briefly, you have to remember the expert is just going to testify in general terms. He's not going to testify. He hasn't interviewed him. He hasn't, he's not going to come to a conclusion about him. He can't talk about him. There's no objection or complaint with respect to that statement. And in context, what that statement is, is a rehash of everything that the parties in the district court agreed upon before trial with the extent insofar as Dr. Kraft would not testify to whether Mr. Solaire believed that Janice was a minor or whether Mr. Solaire was role-playing. Mr. Goldman, we typically see something that in the nature of an offer of proof where testimony is excluded. And I looked through the record on this. I didn't see any thing similar to an offer of proof. Was there an offer of proof here as to what the Dr. Kraft would have said had he been allowed to testify as fully as the defendant says? I think the best example of that would be pages 43 to 45 of the appendix, which is the notice of expert witness and summary of anticipated testimony. And there, I would just note for the court, Mr. Solaire says Dr. Kraft will address two issues. One, he says he'll discuss the psychology behind internet communication and messaging. And the second one is that Dr. Kraft will explain specifically the difference between the desire to actually engage in sexual activity with a minor in mere fantasy and role-playing related to sexual contact with children. So that is both of these twin strands of testimony that Mr. Solaire wanted to elicit from Dr. Kraft were set forth in the expert notice. And this is the testimony that district court said will be admitted without qualification, again, except the testimony as to the ultimate issue about what in Dr. Kraft's view Mr. Solaire believed with respect to the age of the minor. So that's why I think the government and Mr. Solaire just have dramatically different understandings of what happened in this case. And in our view, as we outlined in our brief, it's simply the case that there was the limitation about which Mr. Solaire complains was simply not I want to, unless there are further questions on that, I want to touch briefly on the issues of the claimed misconduct here. With respect to the goth and the vulnerable victim testimony, I want to just note for the court. How was that relevant? How was this information about goth relevant? So the trial record does not make clear in terms of the testimony exactly what the government was going for here. I do think it gets fleshed out a little bit more in the post trial briefing. And again, the government, well, let me just let me finish answering your question, then I want to pivot. I understand generally why it could be relevant if it was somehow tied to the defendant. But I don't see anything that ties this line of testimony to this defendant. So I think, I think what was happening here, Your Honor, is the government was responding to hints of a trial defense that perhaps would have gone along the lines of the Craigslist ad listed the age of 69, the kick username involved the number 666. And basically, the idea would be only an adult would know, would understand the sexual references that those two things connote. And so when Mr. Solaire was responding to an ad with the age of 69, that's how is 666? I mean, we I think most people who've seen the omen understand that is the mark of the beast. But how is it sexual? 69, I believe we understand, but I don't understand 666. So I don't think the 666, and I want to be clear, we, the government agreed for this testimony to be struck from the record, the district court struck it multiple times and issued multiple curative instructions. And we don't actually in our answering brief, ask the court to hold that this testimony was should have been allowed to be considered by the jury. But to answer Your Honor's question, it kept coming up 666. Well, it came up for a brief window of testimony and never again, it was not referred to in the government's closing argument. But let me just answer Your Honor's question as precisely as I can. Okay. The 666 I think was relevant insofar as it was relevant, it was relevant to an understanding that only an adult would know that 666 connotes anything. And so when Mr. Soler saw 666 in a kick username, the argument would go that would lead him to believe he was he was interacting with an adult because what kid would know that 666 the number 666 kind of means anything. And I would point the court to page 542 of the appendix, which is Mr. Soler's post verdict motion for a judgment of testimony. And he says the Craigslist advertisement reference to sexual position 69 and the number 666 known as the mark of the beast. And then he says this, these two facts were a central part of the theory of the defense. In Mr. Soler's view, it was reasonable to believe he was not speaking with a 13 year old due to references to oral sex positions in satanic numbers. So if there was relevance, it would be to respond to that particular sort of strain of defense. But again, this testimony was struck. There were there were curative instructions issued contemporaneously with the testimony and in the closing argument and in the closing instructions, specific curative instructions with respect to this testimony. There were then broader instructions that reminded the jury that it must base its verdict on evidence and that testimony that was struck is not evidence and cannot be considered. And this court has voluminous case law in this exceptional and unusual of circumstances. These kinds of jury instructions cure any prejudice that could flow from improper information being put before the jury. Couple that with the overwhelming evidence of Mr. Soler's guilt based on facts that are completely independent of the goth and the vulnerable victim. I think the thing that troubles me is having this assistant United States attorney just blurt this out. It comes right out of left field and she places it in front of the jury. There's no corresponding linking of that comment to anything. As a matter of fact, the purported young girl's photograph is not the photograph of a goth youth. She's just a normal youth. It just comes completely out of left field. What do you say about that kind of activity on the part of the government? It's troubling, at least to me. Couple that with her talk about her own children being on kick. I think that's very troubling. The comment in rebuttal closing about my children use kick, that's when we agreed in our brief that that was misconduct. It relied on facts that were not put into evidence. But again, it was immediately struck. The government apologized. It was an inadvertent comment. It was immediately struck. The district court told the jury not to consider that comment. And again, going to the she said that the kids are on kick and that her own kids are on kick. I mean, it's very potent. How much experience does this prosecutor have? My understanding is that this was perhaps this is not in the record, Your Honor, but I'm happy to answer it if you like. My understanding is that this was maybe this prosecutor's fourth criminal trial. The prosecutor had more extensive experience on the civil side. The one statement that is on the record is that this was this prosecutor's first time doing jury selection by herself. So that's what I can that's what I can represent. The judges express statement during the peremptory challenge business where he said, we will not reveal this publicly to the jury and then she just blurted it out. Uh, what kind of standard are we supposed to be upholding for assistant U.S. attorneys? That's a direct violation of a court order. So it undoubtedly that's true. And we don't we don't dispute that in our briefing. And the assistant United States attorney didn't dispute that in district court. There was immediate and multiple apologies for that. And but again, putting this in the lens of the lens that this court is applies to all of these claims, considered separately or cumulatively, is whether these errors so poisoned the well, that there was prejudice to Mr. Solaire, that there's a reasonable chance that the outcome would have been different. But for these errors as to the peremptory challenge issue, we can't identify any possible prejudice here because the way jury selection went and the exercise of the peremptories, the parties exercise their peremptories just by writing down on a piece of paper and handing it to the clerk. And at the end of the process, the clerk simply read the names and numbers of those veneer persons selected to serve on the pettit jury. There is no possible way, even with the government's public statement about not exercising its last two peremptories. There's no real way that anyone involved, any of the veneer persons involved would have been able to know which party, if either struck any of the peremptories. We don't view that as at all adding to any source of prejudice. I'm sorry, after she said what she said, that she, you know, the jury was fine. Did the defense pass any more slips of paper up? Any more peremptory challenges? I believe so. Well, the defense, what I do recall, Your Honor, is the defense had its final four peremptories to exercise. And so the defense would have done something with respect to those last four on a piece of paper. So the jury would have seen the defendant exercising his peremptory challenges? The jury would have, the veneer would have seen the defense counsel hand the form to the to the courtroom clerk. Whether the veneer would have seen, you know, um, uh, but, but with respect to all of these errors, again, um, the lens that this court applies, this, this, this multi-factor test about poisoning the well, I think the evidence here shows, and I don't think the district court had any problem accepting the fact that these errors were inadvertent, accidental. They were fleeting. Mr. Soler got the relief. Counsel, you've, you've got what's in your brief, and we've run quite a bit over time. So I'm going to go ahead and stop you there. If you would go ahead and mute your device, Mr. McCutcheon, you're reserved two minutes. Good morning again, Andrew McCutcheon on behalf of Mr. Soler Montalvo. Um, I want to begin by addressing Judge Woodcock's question regarding a proffer, regarding the expert testimony. Um, pages 44 and 61 of the record, um, a proffer, and then, um, an additional proffer, which is subsection 2 of the reply to response in opposition to notice of expert witness, details the second, um, or the first, um, category of testimony that was excluded by the district court. Um, the government omitted a portion of, of the information included in the notice, and then the additional proffer, and I'd like to read that. It's at doc, excuse me, um, the appendix at 44. Quote, for those who desire to engage in sexual activity with the child, the desire is often a way of life. Patterns of behavior may include the collection of large amounts of child pornography over a period of years, grooming children via the use of gifts and promises, and gravitating to employment activities and relationships that provide access or proximity to children. Um, conversely, conversations and fantasies involving taboo thoughts or topics are often far afield from the actual desire to engage in that type of behavior, and then, um, that proffer is further clarified, as I mentioned, on, uh, at appendix 61. Um, I, I also want to address, um, Judge Thompson's concern about the kick messages, uh, and point out that those statements were made during the was left with that, the last thing that they had essentially heard, um, that kids like to use kick, including the prosecutor's own kids, um, and then after, uh, Mr. Soler was forced to object and request a sidebar and an instruction, the prosecutor followed that up with a statement, um, that, um, the, uh, agent was protecting Puerto Rico's children from online predators, insinuating that a failure to convict Mr. Soler, um, due to his use of kick, um, would subject Puerto Rico's children, including the prosecutor's own children, uh, to this proverbial boogeyman who's out there attempting to prey, uh, on, on kids, and that is the most emotional thing that the jury can hear immediately before deliberation. An appeal to protect the children, including the prosecutor's own children, is extremely prejudicial. The only purpose it can have is to inflame the jury immediately before deliberations, uh, and taint what should have been. Counsel, your reserved time has ended. Thank you. Thank you, Your Honor. Thank you both. That concludes argument in this case. Attorney McCutcheon and Attorney Goldman, you should disconnect from the hearing at this time.